UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

Gregory James Reed,                                   Case No. 14-53838-MBM
                                                      Chapter 7
_____Debtor._____/                Hon. Marci B. McIvor
Keeper of the Word Foundation,

                    Plaintiff,

v.                                                    Adv. Pro. No. 16-05089

Kenneth A. Nathan, Chapter 7 Trustee,
David Findling, Special Counsel for Trustee,
Byzantine Holdings, LLC,
Dwellings Unlimited, LLC,
Debtor's Estate, John Does,

_____Defendants._____/


**OPINION (1) GRANTING DEFENDANTS FINDLING AND NATHAN'S
MOTION FOR SUMMARY JUDGMENT;  (2) GRANTING DEFENDANT DWELLINGS
UNLIMITED LLC'S  MOTION TO DISMISS; AND (3) DISMISSING
COMPLAINT AS TO ALL DEFENDANTS**

The motions before the Court are Defendants Kenneth A. Nathan and David Findling's

Motion for Summary Judgment and Defendant Dwelling Unlimited LLC'S  Motion to Dismiss.

For the following reasons, Defendants Findling and Nathan's Motion for Summary Judgment is

GRANTED, Defendant Dwellings Unlimited, LLC's Motion to Dismiss is GRANTED, and

Plaintiff's Complaint is Dismissed as to all Defendants.


I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Debtor Gregory Reed, Norwaine Reed and Sharon Lawson filed Articles of Incorporation for the "Keeper of the Word Foundation" ("KWF"). KWF was established as a non-profit corporation whose purpose was to collect and preserve items of historic interest, primarily for educational purposes.

On October 3, 2000, Verladia Blount filed for divorce from Debtor. A Judgment of Divorce was entered on May 16, 2003. Ultimately, Blount was awarded $230,000 in the divorce proceedings, payable by Debtor. Blount was unable to collect on her judgment and, on September 6, 2013, David Findling was appointed by the Wayne County Circuit Court as receiver in the divorce case.

On August 28, 2014, Gregory Reed filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Kenneth Nathan was appointed as the Chapter 7 Trustee in the case. Kenneth Nathan will hereinafter be referred to as the "Trustee". On February 4, 2015, this Court entered an Order Approving the Application for Employment of David Findling as Special Counsel to the Chapter 7 Trustee. David Findling will hereinafter be referred to as "Special Counsel."

On December 15, 2014, Blount filed a claim in the amount of $230,000. (Claim No. 2). On March 15, 2016, this Court entered an Order Denying Debtor's Objection to Blount's Claim. (Case No. 14-53838, Docket No. 481)[1]. This ruling was later affirmed by the Federal District Court for the Eastern District of Michigan (Docket No. 589).

On February 25, 2015, KWF filed a pleading entitled "Notice of Appearance of Counsel

---

[1]Unless otherwise noted, all citations to the docket refer to the docket for the main bankruptcy case, Case No. 14-53838.

for Keeper of the Word Foundation, Interested Party." (Docket No. 107).

On June 15, 2015, the Trustee filed a Motion for Turnover of Property of the Estate, seeking to marshal all of Debtor's assets.

While investigating Debtor's assets, the Chapter 7 Trustee became concerned that Debtor had commingled his assets with those of KWF to such an extent that KWF might no longer qualify as a non-profit corporation. On September 1, 2015, Special Counsel sent a letter to the State of Michigan, Office of the Attorney General, detailing his concerns about the non-profit designation of KWF and requesting that the attorney general institute *quo warranto* proceedings pursuant to MCR 3.306(B).[2] The Trustee's letter stated:

> Michigan law allows for an action of quo warranto against a corporation for "any misuser, nonuser, or surrender, forfeited its corporate rights, privileges and franchises …" MCL § 600.4521. MCR 3.306(B). In the case of *People ex rel O'Brien v. Society of Good Neighbors*, 327 Mich. 620 (1950), quo warranto proceedings were allowed to dissolve a nonprofit where the allegations included the president converting the funds of the corporation for the personal use of he and his wife and the property was not acquired, held, and disposed of as required under the applicable act.

(Docket No. 211, Letter from Special Counsel to William Bloomfield, Assistant Attorney General, State of Michigan).

On September 28, 2015, Chief Legal Counsel for the Office of the Attorney General sent

---

[2]MCR 3.306(B)(1)(b) states:
(B) Parties.

(1) Actions by Attorney General. An action for quo warranto is to be brought by the Attorney General when the action is against:
. . . .
(b) a person who usurps, intrudes into, or wrongfully holds or exercises an office in a public corporation created by this state's authority;

3

a response to the Trustee's counsel. That letter stated in relevant part:

> Under MCL 600.4501,[3] the "attorney general shall bring an action for quo warranto when the facts clearly warrant the bringing of that action." While this office has carefully reviewed your correspondence, we are not persuaded that the circumstances warrant participation by this office.
>
> The Attorney General, therefore, declines to institute the quo warranto action you have requested and leaves you to pursue whatever remedies may be available to you under applicable law.

(Docket No. 211.)

On October 7, 2015, this Court commenced an evidentiary hearing on the Trustee's

Motion for Turnover. Before the Court started taking testimony, the Trustee argued that KWF

was, in essence, an alter ego of the Debtor Gregory Reed, and therefore KWF should be

dissolved. In response to that argument, this Court stated:

> Mr. Thornbladh (representing KWF), your brief just argued on behalf of KWF that it's a legitimate non-profit corporation. I've already ruled that. I'm with you. That's not the issue. The issue is if the corporation is action for a – the income is being used for an improper purpose, can it be dissolved, and if it's going to be dissolved, where should that take place?

The Court went on to say:

> . . . because what I'm tempted to do is just send that specific issue to state court and authorize the Trustee to bring an action in state court against Keeper of the Word;

(Docket No. 266, Transcript of October 7, 2015 hearing, p. 8).

As the record in the bankruptcy case demonstrates, the Trustee chose not to seek

---

[3]MCL 600.4501 states:

> The attorney general shall bring an action for quo warranto when the facts clearly warrant the bringing of that action. If the attorney general receives information from a private party and refuses to act, that private party may bring the action upon leave of court.

4

dissolution of KWF and never filed a state court action seeking that remedy.

The evidentiary hearing on the Trustee's Motion for Turnover was conducted over three days: October 7, 2015, October 15, 2015 and November 2, 2015. Sharon Lawson and Debtor testified on behalf of KWF and Debtor also testified on his own behalf.

On December 17, 2015, this Court issued an Opinion Requiring Debtor to Turnover Assets to the Bankruptcy Estate. The Opinion set forth the assets owned or controlled by Debtor and entered an Order requiring turnover of those assets to the Chapter 7 Trustee. One of the assets which this Court included as property of the bankruptcy estate is real property located at 1201-1209 Bagley, Detroit, MI (the "Bagley Property"). This Court found that, although the Bagley Property was titled in KWF's name, Debtor had co-mingled his assets with those of KWF to such an extent that Debtor's 50% interest in the Bagley Property was property of the bankruptcy estate. Specifically, the Opinion stated:

> The evidence supports the conclusion that KWF has always engaged in *some* activity consistent with its stated purpose. The evidence is even stronger, however, that Reed has used KWF primarily to protect his income and assets from the claims of creditors. Since at least 2012, Reed has had sole control over the financial affairs of KWF (10/7/2015 Tr. at 118-120; KWF's Trial Ex. 1, Doc. 195-1 through Doc. 197-7). He used that control for his own benefit. He used the KWF bank account to pay all, or most of, his personal expenses, including the mortgage on the Burns Property, utilities, credit cards, and the Lexus car payment. His social security income was deposited into the KWF accounts. Reed used KWF to sell personal property and then retained the benefits of the transactions for himself.

> Reed also used KWF for purposes which have nothing to do with the charitable and educational mission of KWF. There are two transactions which demonstrate that Reed used KWF to hide financial transactions entirely unrelated to KWF.

(Docket No. 344, Opinion, p. 27-28.)

5

The Court went on to detail the transaction in which Debtor had used KWF to borrow money for his own real estate development project and how Debtor used KWF bank accounts to hide money paid directly to Debtor. (Docket No. 344, Opinion, pp. 26-32.) The Court concluded, as stated above, that Debtor's 50% interest in the Bagley property was an asset of Debtor's bankruptcy estate. The Order effectuating that Opinion states in relevant part:

> IT IS HEREBY ORDERED that the Chapter 7 Trustee's Motion for Turnover, is GRANTED. The following assets must be turned over to the Chapter 7 Trustee:
>
> * * *
>
> (7) The fifty (50%) percent interest held by Keeper of the Word Foundation in the real property located at 1201-1209 Bagley, Detroit, Michigan; and
>
> * * *
>
> IT IS FURTHER ORDERED that the above referenced property shall be turned over to the Trustee within ten (10) days of the entry of this Order.

On December 23, 2015, Debtor Gregory Reed and Keeper of the Word Foundation appealed this Court's December 17, 2015 ruling.

On January 4, 2016, this Court entered an Amended Order Granting Chapter 7 Trustee's Motion for Turnover.[4]

On August 17, 2016, the Court entered an Ex-Parte Order Authorizing Trustee's Employment of Realtor. The Order authorized the Trustee to employ Dwellings Unlimited, LLC as the real estate broker to market and sell the Bagley Property. (Docket No. 618).

On August 30, 2016, the Trustee filed a Motion for Order Authorizing Sale of Real

---

[4]The original Order entered with the Opinion Granting Chapter 7 Trustee's Motion for Turnover was amended to fix a typographical error in the address of the property located on Burns, Detroit, MI.

Property (hereinafter "Motion for Sale"). The Trustee sought to sell the Bagley Property to Byzantine Holdings, LLC for $1,060,000.00. The Trustee and the Charles H. Brown Trust (the co-owner of the Bagley Property) accepted the offer subject to Court approval and the entry of an order authorizing the sale of the Property.

Between September 19, 2016 and September 30, 2016, KWF, Debtor Gregory Reed, Gregory J. Reed & Associates, P.C., the Gregory J. Reed Scholarship Foundation, and two individuals, K. El Hakim and L. Wilson, filed objections to the Motion for Sale of the Bagley Property.

On October 11, 2016, the United States District Court for the Eastern District of Michigan issued its Amended Opinion and Order Affirming the Bankruptcy Court's January 4, 2016 Order requiring turnover of the assets. That Opinion and Order affirmed the Bankruptcy Court's ruling that Debtor's bankruptcy estate includes a 50% interest in the Bagley Property. *See, Reed v. Nathan,* 558 B.R. 800 (E.D. Mich. 2016).

On November 3, 2016 and November 8, 2016, creditor Verladia Blount (Debtor's ex-wife) and the Charles H. Brown Trust (the other 50% co-owner of the Bagley Property) filed concurrences with the Trustee's Motion for Sale of the Bagley Property.

On November 8, 2016, the Court held a hearing on the Trustee's Motion for Sale. At the conclusion of the hearing, the Court issued a bench opinion overruling the objections to the Motion for Sale. The Court subsequently entered its Order Approving Sale of Real Property and for Payment of Real Property Taxes and Closing Costs at Closing ("Order Approving Sale"). (Docket No. 656).

On November 16, 2016, KWF filed a complaint in the Wayne County Circuit Court

against Kenneth A. Nathan, Chapter 7 Trustee, David Findling, Special Counsel for Trustee, Byzantine Holdings, LLC (the purchaser), Dwellings Unlimited, LLC (the real estate broker), Debtor's Estate, and John Does. (Wayne County Circuit Court Case No. 16-014948-CH). The Wayne County Complaint contained the following counts:

> Count I - Declaratory Relief, requesting that the state court void orders of the bankruptcy court and award KWF compensatory damages of $600,000.

> Count II - Fraudulent Conveyance, requesting that the state court void orders of the bankruptcy court and the federal district court and award KWF treble damages in excess of $1.8 million.

> Count III - Abuse of Process, alleging that Defendants' actions in the bankruptcy case were an abuse of process and seeking damages in excess of $25,000.

> Count IV - Slander of Title, alleging that Defendants unlawfully encumbered assets of KWF and seeking damages in an unspecified amount.

> Count V- Business Interference: Disrupt Charitable Purposes, alleging that Defendants engaged in malicious acts and seeking damages in excess of one million dollars.

> Count VI - Violation of Elliott Larsen Act, alleging that Defendants violated the Elliott Larsen Act and seeking damages in an unspecified amount.

(Adv. Case No. 15-5089, Docket No. 6, Exhibit A1, Amended State Court Complaint).

On November 18, 2016, Debtor filed a Motion for Reconsideration of this Court's November 8, 2016 Order Approving Sale. On November 22, 2016, this Court entered an Order denying the Motion for Reconsideration. (Docket No. 688). Neither the Order Approving Sale or the Order Denying the Motion for Reconsideration have been appealed.

On November 23, 2016, the Trustee and Special Counsel, filed a notice to remove the Wayne County Circuit Court proceeding (Case No. 16-014948-CH) to the Bankruptcy Court. The removed case was given Adversary Case No. 16-5089.

8

On December 12, 2016, KWF filed a motion for remand. In its motion for remand, KWF argued that the Bankruptcy Court does not have jurisdiction over the state court action.

On January 10, 2016, Dwellings Unlimited, LLC, one of the Defendants in the removed state court case, filed a Motion to Dismiss. On January 13, 2017, Defendants Kenneth Nathan and David Findling filed a Motion for Summary Judgment in the removed state court case.

On January 13, 2017, this Court held a hearing on KWF's Motion for Remand. At the conclusion of the hearing, the Court issued a bench opinion denying the Motion for Remand. An Order Denying the Motion to Remand was entered on January 17, 2017. KWF did not appeal that ruling.

On January 27, 2017, in the removed case (Adv. Proc. No. 16-5089), KWF filed a motion seeking the recusal of Judge Marci B. McIvor.

On February 5, 2017, KWF filed a response to the Trustee's and Special Counsel's Motion for Summary Judgment.

On February 8, 2017, this Court entered an Opinion and Order Denying the Motion to Recuse.

II.

LEGAL STANDARDS

A.    Standard for Motion to Dismiss

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Complaint must allege facts which, if proven, would entitle Plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *See also, First Am. Title Co. v. DeVaugh*, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with

9

respect to all material elements necessary to sustain a recovery under some viable legal theory."
*Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the court should "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand*, C.P.A., 272 F.3d 356, 360 (6th Cir. 2001); *Twombly*, 550 U.S. at 570.


B.      Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056 (Rule 56 applies in adversary proceedings).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find

for the non-movant; a "scintilla of evidence" is insufficient.  *Liberty Lobby*, 477 U.S. at 252.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the

non-movant's favor.  *Id*. at 255.

III.

OVERVIEW OF PLAINTIFF'S COMPLAINT

Before the Court applies the legal standard for dismissal or summary judgment to the facts

of this case, the Court must deconstruct Plaintiff's Complaint.  Plaintiff's Complaint is so

inartfully drafted that it is difficult to connect the first twelve pages setting forth KWF's version

of the facts with the subsequent pages identifying Plaintiff's causes of action against the Trustee,

Special Counsel, the real estate broker who brokered the sale of the Bagley property (Dwellings

Unlimited), the purchaser of the property (Byzantine Holdings), the Debtor's Estate, and "John

Does". Notwithstanding the labels on the various counts in Plaintiff's Complaint (fraudulent

transfers, abuse of process, slander of title, business interference, and breach of the Elliott Larsen

Act), Plaintiff has failed to cite any statutes related to these causes of action or to plead the

elements of any of these causes of action.  This Court can only make sense of Plaintiff's

Complaint by attempting to identify the grounds upon which Plaintiff believes it is entitled to

relief against the named Defendants.  Plaintiff appears to seek relief under the following theories:

(A) this Court does not have jurisdiction over KWF because KWF is a non-debtor party; (B) the

Trustee and Special Counsel have engaged in unlawful conduct against KWF; (C) the Court erred

in granting the Trustee's Motion for Turnover and the Motion for Sale; and (D) the Office of the

Attorney General was a necessary party in the proceedings before the Bankruptcy Court, but was

not included in those proceedings.

11

The relief requested in KWF's Complaint is that the "status quo be restored as to Plaintiff's rights and interests prior to 2014."  Presumably, KWF is seeking a reversal of this Court's order requiring the turnover of assets of the estate and a reversal of the order authorizing the sale of the Bagley Property.  The Court will discuss each of these possible grounds for relief against the various Defendants.

IV.

<u>ANALYSIS</u>

A.    <u>This Court Has Jurisdiction to Determine What Assets Belong to Debtor's Bankruptcy Estate.</u>

Plaintiff alleges in its Complaint that this Court does not have jurisdiction over KWF because KWF is a non-debtor party.   (Adv. Case No. 16-5089, Docket No. 1, Plaintiff's Complaint, ¶ 30).  The scope of this Court's jurisdiction in this case was fully addressed in the District Court Opinion Affirming this Court's Opinion Requiring Turnover of Assets.  *See, Reed v. Nathan*, 558 B.R. 800 (E.D. Mich. 2016).  The District Court stated:

> To begin, there is no doubt that a bankruptcy court has core jurisdiction to determine what constitutes property of the estate. Indeed, "[i]t is well established that proceedings to determine what constitutes property of the bankruptcy estate under section 541(a) of the Bankruptcy Code are core proceedings." *In re AGR Premier Consulting, Inc*., 550 Fed.Appx. 115, 122 (3d Cir. 2014)(footnote omitted).
>
> *          *          *
>
> The entry of the Final Turnover Order requiring surrender of the Turnover Assets was likewise a core proceeding. A federal statute provides examples of such proceedings, and that statute identifies "orders to turn over property of the estate" as core proceedings. 28 U.S.C. § 157(b)(2)(E). The Final Turnover Order was just such an order: it required KWF to turn over property that belonged to the Estate. The Final Turnover Order thus fit comfortably within the class of core proceedings identified in 28 U.S.C. 157(b)(2)(E). *See, e.g., In re Glenn*, 359 B.R. 200, 204 (Bankr. N.D. Ill. 2006) ("Requests for turnover orders are core proceedings within the jurisdiction of the bankruptcy courts").

12

*Id.* at 815-16.

As already ruled upon by the District Court, it was within this Court's core jurisdiction to determine what assets were part of Debtor's bankruptcy estate. KWF's argument about jurisdiction is an argument which has been fully litigated and determined. (See discussion of collateral estoppel below.) Therefore, KWF's argument that this Court has no jurisdiction to authorize the sale of the Bagley Property fails. To the extent Plaintiff's Complaint rests on the lack of jurisdiction as a theory of relief, Plaintiff has failed to state a claim against any Defendant. This Court finds that it has jurisdiction over this adversary proceeding.


B.  The Trustee, Special Counsel and Dwellings Unlimited, LLC, are Protected From Suits Relating to Acts Performed in those Parties' Official Capacities.

1.  The Barton Doctrine requires a party to obtain leave of court before filing suit against a court-appointed Trustee.

In its Complaint, Plaintiff argues that the Trustee and Special Counsel have engaged in fraudulent transfers, slandered KWF's title, disrupted KWF's charitable purposes, and violated the Elliott Larsen Act, MCL 37.2101.

In 1881, the United States Supreme Court addressed the issue of suits against court-appointed receivers. *Barton v. Barbour,* 104 U.S. 126, 129 (1881). In the *Barton* case, the Supreme Court held that a suit could not be maintained against a receiver for an act in his official capacity without first obtaining leave from the court which had appointed him. This tenet of law became known as the Barton Doctrine. *See also*, *Greenblatt v. Richard Potasky Jeweler, Inc. (In re Richard Potasky Jeweler, Inc.)*, 222 B.R. 816, 822-23 (S.D. Ohio 1998). It is well established that the rule applies in bankruptcy proceedings and to bankruptcy trustees. *Id. (citing Vass v.*

13

*Conron Bros. Co.,* 59 F.2d 969, 971 (2d Cir. 1932) and *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993)).  In the *DeLorean Motor* case, a defendant in a fraudulent transfer action filed suit against the chapter 7 trustee without first obtaining leave of the bankruptcy court.  The Sixth Circuit in the *DeLorean Motor* case articulated the Barton Doctrine in this way:

> [i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court.

*DeLorean Motor,* 991 F.2d at 1240.

In addition, the Sixth Circuit has found that counsel for the trustee is the functional equivalent of a trustee when acting on behalf of the trustee in administering the estate and is protected from suit for actions performed in his official capacity.  The Sixth Circuit has stated:

> [A]s a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, [when] they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets.

*In re McKenzie*, 716 F.3d 404, 411-12 (6th Cir. 2013) citing *Allard,* 991 F.2d at 1241.

In the instant case, Plaintiff has sued Kenneth Nathan and David Findling in their capacities as Trustee and Special Counsel without obtaining permission from this Court.  Such a suit may only survive if the complained of acts were not performed in their official capacities.

This Court finds that all of the acts complained of by KWF were performed by the Trustee and Special Counsel while acting in their official capacity.  Pursuant to 11 U.S.C. § 704(c) the duties of the Trustee include:  (1) collecting and reducing to money the property of the estate for which the trustee serves; (2) being accountable for all property received; (3) investigating the

14

financial affairs of the debtor; and (4) if advisable, opposing the discharge of the debtor.

From the commencement of Debtor Gregory Reed's case, the Trustee had concerns about Debtor's relationship to KWF. Debtor had directed that his social security checks be deposited into bank accounts held in the name of KWF, Debtor's mortgage payments were being paid from KWF bank accounts, and the details of the transfer of title of the Bagley property to KWF in 2011 were murky. (Docket No. 31, Motion to Excuse Pre-petition Custodian from Turnover). All of the Trustee's subsequent activity, including motions regarding Debtor's residence on Burns Street, the Motion for Turnover, and the sale motions, were related to the Trustee's duty to collect property of Debtor's bankruptcy estate and reduce it to money. This Court finds that there is no question of material fact as to whether the Trustee and Special Counsel were acting in their official capacity when they sought to recover Debtor's assets, including assets Debtor had hidden or titled in KWF's name. Plaintiff's failure to request permission from this Court prior to instituting suit against the Trustee and Special Counsel require dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 56(a).

    2.    The Trustee, Special Counsel, and Dwellings Unlimited, LLC are immune from suit regarding acts performed in their official capacities.

It is well-established that trustees, their counsel, and professionals employed by the trustee are entitled to immunity from suit for acts performed in their official capacities. *In re McKenzie,* 716 F.3d 404, 411-12 (6th Cir. 2013). In the *McKenzie* case, a law firm which had represented a debtor prior to his bankruptcy brought suit against the chapter 7 trustee, the trustee's counsel, and the debtor's bankruptcy counsel, alleging malicious prosecution and abuse of process. The bankruptcy court dismissed the suit holding that all parties were entitled to immunity. *Id.* The

15

Sixth Circuit agreed, stating that, "A bankruptcy trustee is liable personally only for acts willfully and deliberately in violation of his fiduciary duties." *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 462 (6th Cir.1982); *See also, In re Heinsohn,* 231 B.R. 48, 64 (E.D. Tenn. 1999) *aff'd.* 247 B.R. 237 (E.D. Tenn. 2000)(court found that trustee was immune from claims of malicious prosecution and defamation arising from trustee's criminal referral of debtor because such a referral is within the trustee's duties). *See also, Kashani v. Fulton* (*In re Kashani),* 190 B.R. 875, 883 (9th Cir. BAP 1995).

In the instant case, the Trustee and his Special Counsel are acting in their official capacities when they liquidate assets of Debtor's bankruptcy estate. Since the Bagley Property is property of Debtor's bankruptcy estate, the Trustee and his Special Counsel are immune from suit related to actions which resulted in the sale of the Bagley Property. Plaintiff cannot state a claim against the Trustee or Special Counsel and, therefore, Defendants Nathan and Findling are entitled to dismissal of Plaintiff's Complaint against them pursuant to Fed. R. Civ. P. 12(b)(6).

This Court finds that this same principle applies to Dwellings Unlimited, LLC acting in its official capacity as the Court appointed real estate broker for the bankruptcy estate. Defendant Dwellings Unlimited, LLC was employed by the Trustee as a real estate broker to market and sell the Bagley Property, and Dwellings' employment was approved by this Court in an order. In finding a buyer for the Bagley Property, Dwellings Unlimited, LLC, was exercising its official duties. For this reason, Dwellings Unlimited, LLC is also entitled to immunity from suit. Plaintiff has failed to state a claim against Dwellings Unlimited, LLC, and Dwellings Unlimited, LLC is entitled to dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

16

C.   The Doctrine of Collateral Estoppel Bars Re-Litigation by KWF of the Opinion and Order Requiring Debtor to Turnover Assets of the Estate, and the Order Approving Sale of Real Property.

Even if Defendants Trustee and Special Counsel were not protected by the Barton Doctrine and quasi-judicial immunity, the doctrine of collateral estoppel precludes Plaintiff from re-litigating issues already decided by this Court.

The doctrine of issue preclusion, or collateral estoppel, prohibits re-litigation of issues of fact or law which were necessarily decided by a previous final judgment. *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). Once an issue is actually determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action when used against any party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 152-54 (1979). The purpose of collateral estoppel is to protect parties from multiple lawsuits, to prevent the possibility of inconsistent decisions, and to conserve judicial resources. *Id.* at 153; *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal the controlling facts and the exact issues litigated. *Kelly v. Okoye* (*In re Kelly*), 182 B.R. 255, 258 (9th Cir. BAP 1995).

Issue preclusion applies where: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

17

This Court finds that the doctrine of collateral estoppel requires this Court to grant summary judgment to all Defendants because Plaintiff's Complaint is a collateral attack on factual findings already made by this Court. Notwithstanding the labels placed on the multiple counts of Plaintiff's Complaint, the primary relief sought by Plaintiff is to obtain a reversal of this Court's orders requiring the turnover of the Bagley Property and the sale of that Property. Plaintiff cannot challenge those rulings because the doctrine of collateral estoppel precludes subsequent litigation of matters already litigated and resolved by the entry of a final judgment.

The first element of collateral estoppel is that the issues raised in the second complaint (the removed Wayne County Action) were actually litigated in a prior proceeding (the Bankruptcy Court's hearing on the Motion for Turnover and the hearing on the Trustee's Motion for Sale of the Bagley Property). As fully detailed in the Statement of Facts, this Court concluded, after a lengthy evidentiary hearing, that the real property located at 1201-1209 Bagley was an asset of Debtor's bankruptcy estate which could be liquidated by the Chapter 7 Trustee. This Court's ruling was affirmed on appeal. Debtor and KWF's objections to the Trustee's Motion for Sale of the Bagley Property were overruled after a hearing on November 8, 2016.[5] The Court's Order Granting the Motion for Sale has not been appealed. This Court concludes that the issues of whether the Bagley Property was property of the bankruptcy estate, and whether the Trustee was authorized to sell the Bagley Property, have been fully litigated in prior proceedings before this Court.

---

[5]Motions for sale of property are addressed in 11 U.S.C. 363(b) which states, in part:

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . .

The second element of collateral estoppel is that the determination of the issue was necessary to the outcome of the prior proceeding. The central issue of this bankruptcy case has been what assets are property of Debtor's bankruptcy estate. As the lengthy record in this case demonstrates, for at least fifteen years prior to filing bankruptcy, Debtor commingled his assets with those of KWF, his law firm (Gregory Reed and Associates, P.C.), and the Gregory Reed Scholarship Foundation. It has taken dozens of motions and a three day evidentiary hearing to disentangle Debtor's assets from the assets of other Debtor-related entities.[6] The resolution of the issue of what property is property of the bankruptcy estate was necessary before the Chapter 7 Trustee could execute his statutory duty to liquidate assets of the bankruptcy estate for the benefit of creditors. Therefore, this Court finds that the determination of what property constituted property of the estate was necessary to the outcome of this bankruptcy case.

The third element of collateral estoppel is that a final judgment has to have been entered on the merits of prior proceedings before this Court. The Opinion Requiring Debtor to Turnover Assets to the Bankruptcy Estate was entered on December 17, 2015 and affirmed on appeal on October 11, 2016. *Reed v. Nathan*, 558 B.R. 800. On November 8, 2016, this Court entered an Order Authorizing the Sale of the Bagley Property ("Order Approving Sale"). That Order has not been appealed. On January 13, 2017, this Court entered an Order Denying Plaintiff's Motion for Remand. That Order has not been appealed. This Court finds that prior proceedings in this Court have resulted in final judgments on the merits.

---

[6]Two issues regarding property of the bankruptcy estate are still pending before this Court. Specifically, the Trustee is investigating (1) a gift of $75,000.00 made by an entity known as Infinity Progress, LLC to Debtor; and (2) Debtor's alleged transfer of the ownership of documents known as "the Malcolm X Papers" to Richard Manson.

19

The last element of collateral estoppel is that the party against whom issue preclusion is sought (that being KWF) had a full and fair opportunity to litigate in the prior proceeding. KWF argues in its Response to Defendant's Motion for Summary Judgment that it is a non-debtor party, and that any issue relating to the relationship between Debtor and KWF could not have been resolved by this Court. While it is undisputed that KWF is a separate and distinct entity from Debtor, the argument that KWF was not an active participant in all of the litigation in this Court is belied by the record. Since February 25, 2015, KWF was represented by counsel and took an active role in the bankruptcy case. Both Sharon Lawson and Debtor Gregory Reed, in their capacity as officers and directors of KWF, testified at the evidentiary hearing on the Trustee's Motion for Turnover. After the Court issued its ruling, both Debtor and KWF filed an appeal. KWF also filed an objection to the Motion for Sale of the Bagley Property (Docket No. 624). The lengthy record in this case defeats KWF's argument that it did not have a full and fair opportunity to litigate every issue raised in it's complaint in prior proceedings.

This Court concludes that all of the elements of collateral estoppel have been met with regard to claims asserted in Count I through VI of Plaintiff's Complaint. There are no questions of fact to be litigated with regard to any of the Defendants and all Defendants are entitled to summary judgment pursuant to Fed. R. Civ. P. 56(a) and Fed. R. Bankr. P. 7056. Plaintiff is barred from relitigating the issue of whether the Bagley Property is property of the bankruptcy estate and whether the Property may be sold by the Chapter 7 Trustee.

D.      The Office of the Attorney General Was Not a Necessary Party to the Motion for Turnover and the Motion for Sale.

With regard to Defendants, Trustee, Special Counsel and Dwellings Unlimited, LLC, this

20

Court has ruled that Plaintiff's Complaint must be dismissed because of the Barton Doctrine and their quasi-judicial immunity from suit. This Court has also ruled that all Defendants are entitled to summary judgment based on the doctrine of collateral estoppel. Although the Court has already cited multiple grounds for granting summary judgment to Defendants, because of the tenacity with which Plaintiff makes the argument, the Court is compelled to address KWF's argument that the Office of the Attorney General is a necessary party to litigation in this Court.

In its Complaint, Plaintiff argues that because KWF is a non-profit corporation, any action taken against the assets of a non-profit corporation require that the Michigan Attorney General be included as a party. Plaintiff asserts that, because the Attorney General was not a party to the Motion for Turnover or the Motion for Sale, those rulings violate state law. While Plaintiff's legal argument is not well articulated, it appears that Plaintiff is relying on MCL 14.254. That statute states, in relevant part:

> 14.254. Attorney general; powers, duties and jurisdiction; register of charitable trusts and trustees
>
> Sec. 4.
>
> (a) Jurisdiction; representation. The attorney general shall have jurisdiction and control and shall represent the people of the state and the uncertain or indefinite beneficiaries in all charitable trusts in this state, and may enforce such trusts by proper proceedings in the courts of this state.
>
> (b) Termination, liquidation or construction of charitable trusts. The attorney general is a necessary party to all court proceedings (1) to terminate a charitable trust or to liquidate or distribute its assets, or (2) to modify or depart from the objects or purposes of a charitable trust as the same are set forth in the instrument governing the trust, including any proceeding for the application of the doctrine of cy pres, or (3) to construe the provisions of an instrument with respect to a charitable trust. A judgment rendered in such proceedings without service of process and pleadings upon the attorney general, shall be voidable, unenforceable, and be set aside at the option of the attorney general upon his motion seeking such relief. The attorney general shall intervene in any proceedings affecting a

> charitable trust subject to this act, when requested to do so by the court having
> jurisdiction of the proceedings, and may intervene in any proceedings affecting a
> charitable trust when he determines that the public interest should be protected in
> such proceedings. . . .

Based on the statute, KWF argues that the Attorney General was a necessary party to all matters in this Court relating to KWF and judgments entered by this Court are voidable and unenforceable.

This Court finds that KWF's reliance on MCL 14.254 is misplaced for several reasons. First, KWF has cited no law or facts to clarify whether KWF is a "charitable trust" for purposes of MCL 14.254(a)[7] nor has KWF identified the "indefinite beneficiaries" allegedly harmed by rulings of this Court.

Second, the Attorney General is only a necessary party to court proceedings which seek to: (1) terminate a charitable trust or to liquidate its assets; (2) to modify the purposes of a charitable trust; or (3) to construe the provisions of an instrument with respect to a charitable trust. As discussed in the statement of facts, early in the bankruptcy case, the Trustee considered seeking dissolution of KWF because Debtor's financial affairs were intermingled with those of KWF. On September 1, 2015, the Trustee wrote to the Attorney General requesting that the office of the Attorney General take action against KWF. On September 28, 2015, the Attorney General declined to institute a *quo warranto* action against KWF. The Trustee never pursued an action seeking dissolution of KWF.

Based on the record and testimony at the evidentiary hearing, this Court concluded, in its

---

[7]MCL 14.252(b) states: "'Charitable trust' means the relationship where a trustee holds property for a charitable purpose." KWF has not demonstrated that it is holding the Bagley Property for a charitable purpose. In fact, this Court, in its Opinion Regarding Turnover, has already determined that the contrary is true.

Opinion Requiring Debtor to Turnover Assets to the Bankruptcy Estate, that KWF was a nonprofit corporation with an identity separate and distinct from Debtor. The Court found, however, that Debtor had "parked" some assets in KWF to place those assets (specifically the Bagley Property) out of the reach of Debtor's creditors. For reasons fully explained in its Opinion Requiring Debtor to Turnover Assets to the Bankruptcy Estate, this Court concluded that the Bagley Property was property of Debtor's bankruptcy estate. There has never been an action in this Court, or any other Court, seeking to terminate KWF, or to modify the educational purposes of KWF, or to construe the provisions of its Articles of Incorporation, filed in 1996, which established KWF. Because there has never been a court action seeking to dissolve KWF, or to force KWF to modify its purpose, MCL 14.254 has no applicability to rulings made in this bankruptcy case.[8]

Third, KWF ignores the explicit language of the statute. MCL 14.254 states that a judgment relating to the dissolution or modification of a charitable trust "shall be voidable, unenforceable and be set aside at the option of the attorney general upon his motion seeking such relief" and that the Attorney General "shall intervene in any proceedings affecting a charitable trust subject to this act, when requested to do so by the court having jurisdiction of the proceedings, and may intervene in any proceedings affecting a charitable trust when he determines that the public interest should be protected in such proceedings". The Attorney

---

[8]Plaintiff also argues that MCL 450.2301 precludes the Trustee from selling the Bagley Property. MCL 450.2301 is part of the nonprofit corporation act, MCL 450.2301 et. seq. MCL 450.2301 concerns the use and distribution of assets, income and profits of nonprofit corporations and sets forth the powers of nonprofit corporations. This Court has ruled that the Bagley Property is not property of KWF, but rather property of Debtor's bankruptcy estate. Since the Bagley Property is not an asset of a nonprofit corporation, MCL 450.2301 is inapplicable.

23

General has never filed a motion seeking relief of any sort in this Court. There is no evidence in the record that KWF ever requested that the Attorney General take a position regarding the Trustee's Motion for Turnover or the Motion for Sale of the Bagley Property. In fact, the evidence is to the contrary. The Attorney General declined to initiate any type of action against KWF. The Attorney General's letter stated, "[w]e are not persuaded that the circumstances warrant participation of this office." The letter went on to state that the Trustee had leave "to pursue whatever remedies may be available to you under applicable law." (Docket No. 211). While it is undisputed that the correspondence between the Trustee and the Attorney General was in the context of seeking action by the Attorney General against KWF, this Court concludes that the Attorney General affirmatively declined any interest in any action taken by the Trustee against KWF under state or federal law. In other words, not only did KWF never seek the intervention of the Attorney General, the Attorney General chose not to intervene because it had made a determination that participation by the Attorney General was not warranted. Because the Attorney General affirmatively left any action involving KWF to the Trustee, KWF has no grounds for arguing that rulings issued by this Court are voidable under MCL 14.254.

Fourth, KWF's argument that the Attorney General was required to be a party in this matter is barred by doctrine of *res judicata. Res judicata* or "claim preclusion," is the doctrine by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment." *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). The doctrine preludes not only relitigation of claims that were previously decided, but litigation of any claim or defense that should have been, but was not, raised in the prior lawsuit.

*Id.*

The elements of claim preclusion are: (1) a final decision on the merits by a court of competent jurisdiction; (2) the same parties or their privies that were involved in the first action are present in the second action; (3) the second action raises an issue or claim that was, or should have been, litigated in the first action; and (4) there is an identity of claims between the first and second actions. *Sanders Confectionery Prods., Inc. v. Heller Fin. Inc*., 973 F.2d 474, 480 (6th Cir. 1992)(citing *King v. S. Cent. Bell Tel. & Tel. Co.*, 790 F.2d 524 (6th Cir. 1986), and *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224 (6th Cir. 1981)).

This Court finds that KWF is challenging final decisions on the merits, involving the same parties as those in its Complaint, and raising a claim that could or should have been raised as a response to the Trustee's Motion for Turnover. KWF made no such claim at the time. While KWF did argue that the Attorney General was a necessary party in its Objection to the Trustee's Motion for Sale of the Bagley Property, KWF made no effort to bring the Attorney General into the case, nor did KWF appeal this Court's Order Granting the Motion for Sale of the Bagley Property. Any claim about the necessity of the Attorney General as a party in the bankruptcy is barred by the doctrine of *res judicata*.

For all the reasons set forth above, this Court finds that there are no facts which support KWF's argument that MCL 14.254 renders any rulings by this Court void or unenforceable. Since all Counts of Plaintiff's Complaint rely on MCL 14.254 as a theory of recovery, all Defendants are entitled to summary judgment on all Counts of the Complaint to the extent those Counts seek recovery on those grounds.

GROUNDS FOR SUMMARY JUDGMENT OR DISMISSAL FOR DEFENDANTS
BYZANTINE HOLDINGS, LLC, DEBTOR'S ESTATE AND JOHN DOES

In addition to Kenneth Nathan, David Findling, and Dwellings Unlimited, LLC, Plaintiff

has named Byzantine Holdings, LLC, Debtor's Estate and "John Does" as Defendants in the

Complaint.  There is not a single statement in the Complaint to explain why "Debtor's Estate"

and "John Does" are named as Defendants.  Therefore, this Court finds that Plaintiff has failed to

state a claim against "Debtor's Estate" or "John Does" and Plaintiff's Complaint is dismissed as

to those Defendants.

The Complaint does contain two  paragraphs which mention Byzantine Holdings. These

paragraphs state:

> 11.     Defendant Bryzantine [sic] Holdings LLC managed by Christos Moisides
> is a Michigan Corporation residing in Michigan, a buyer located to buy
> KWF's interest [in the Bagley Property] significantly below market value,
> not at arm's length, without KWF's authorization and the Attorney
> General's approval which cannot be sold or liquidate [sic] to a private
> person prohibited by law.  MCL 450.2301 and IRS 501(c) 3 regulations.
>                         *          *          *
> 47.     The assets are not KWF nor may they be transferred to a private party
> Bryzantine [sic] by law MCL 450.2301, MCL450.254 without the
> Approval of AG and IRS 501(c)3 for non-charitable purposes.  Defendants
> have abused an inappropriate forum for their own personal gains and
> disregard laws Michigan charitable and Consumer Protection Act 1976
> (Exhibits A, B, C, and G).

These paragraphs allege, in essence, that the Trustee lacked authority to sell the Bagley Property

and, therefore, Byzantine could not purchase the Bagley Property.

Plaintiff's allegation against the Trustee and Byzantine Holdings, LLC are not support by

the facts or law.  With regards to the Trustee, Special Counsel, and Dwellings Unlimited, LLC,

the Court has fully discussed, above, why Plaintiff's arguments against these parties fail.  With

respect to Defendant Byzantine Holdings, LLC, the Court finds that Byzantine Holdings, LLC has a defense to Plaintiff's Complaint that is specific to a purchaser who purchases property at an authorized bankruptcy sale. 11 U.S.C. 363(m) states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

"The effect of § 363(m) is that 'when an order confirming a sale to a good faith purchaser is entered and a stay of that sale is not obtained, the sale becomes final and cannot be reversed on appeal.'" *In re Stadium Mgt Corp*, 895 F.2d 845, 847 (1st Cir. 1990) *quoting Creditor Committee v. Armstrong Business Credit Corp. (In re Saco Local Development Corp.)*, 19 B.R. 119, 121 (BAP 1st Cir.1982); *Parker v. Goodman (In re Parker)*, 499 F.3d 616, 620-1 (6th Cir. 2007).

The Order Approving Sale of the Real Property, entered on November 8, 2016, explicitly stated: "Byzantine Holdings, LLC is deemed good faith purchaser for purposes of 11 U.S.C. §363(m)." (Docket No. 656). Plaintiff did not obtain a stay of the Order Approving Sale. As a matter of law, the sale is final and cannot be reversed on appeal or by a collateral attack in another forum. Because there is no question as to any material fact with regards to Plaintiff's failure to appeal the sale order, Byzantine Holdings, LLC is entitled to summary judgment.


VI.

<u>CONCLUSION</u>

The Barton Doctrine and quasi-judicial immunity require the dismissal of Plaintiff's Complaint against Kenneth Nathan, David Findling and Dwellings Unlimited, LLC. Defendant

27

Byzantine Holdings is protected from suit by 11 U.S.C. § 363(m). In addition, Plaintiff has failed to state a claim against "Debtor's Estate" or "John Does". The doctrines of collateral estoppel and *res judicata* require dismissal of Plaintiff's Complaint as to all Defendants. For these reasons, this Court GRANTS Defendants' Motions to Dismiss and /or for Summary Judgment as to all Defendants.

Signed on March 01, 2017

/s/ Marci B. McIvor
Marci B. McIvor
United States Bankruptcy Judge
